UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CERTAIN UNDERWRITERS AT
LLOYD'S – SYNDICATE 457,

    Plaintiff/Counter-Defendant,        Civil Action No. 19-cv-13654
                                                       HON. BERNARD A. FRIEDMAN

vs.

GLOBAL TEAM, USA, LLC,

    Defendant,

and

SUMIKA POLYMERS NORTH
AMERICA, LLC,

    Defendant/Counter-Plaintiff,
_____/

SUMIKA POLYMERS NORTH
AMERICA, LLC,

    Plaintiff/Judgment Creditor,        Civil Action No. 20-cv-10180
                                                      (Consolidated Case)

vs.

GLOBAL TEAM, USA, LLC,

    Defendant/Judgment Debtor,

and

CERTAIN UNDERWRITERS AT
LLOYD'S – SYNDICATE 457,

    Defendant/Garnishee.
_____/

<u>**OPINION AND ORDER GRANTING PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT/COUNTER-PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**</u>

I. <u>Introduction</u>

Certain Underwriters at Lloyd's – Syndicate 457 ("Underwriters") commenced this declaratory action against Global Team, USA, LLC ("Global") and Sumika Polymers North America, LLC ("Sumika") to ascertain the scope of its obligations under an insurance policy that it previously issued to Global. Sumika counterclaimed for the same declaratory relief and sought to enforce a garnishment lien on any proceeds Underwriters may owe to Global under the policy.

Before the Court are the parties' cross-motions for summary judgment (ECF Nos. 47, 53), as well as the responses and replies corresponding to each motion. (ECF Nos. 56, 60-61, 63). The Court will decide the motions without oral argument pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, the Court shall grant Underwriters' motion for summary judgment and deny Sumika's cross-motion for summary judgment.

II. <u>Background</u>

Global was a customs broker and transportation intermediary headquartered in Romulus, Michigan. (ECF No. 50-2, PageID.1626, Tr.17:18-19, PageID.1627, Tr.18:4-5, Tr.18:11-19). The company assisted international businesses with

1

importing goods into the United States. (*Id.*, PageID.1627, Tr.18:11-19). Underwriters issued an "Errors and Omissions" insurance policy to Global on March 12, 2018. (ECF No. 47-2, PageID.1393). The policy covered Global's negligent acts, errors, or omissions while rendering transportation intermediary or customs broker services. (ECF No. 47-2, PageID.1395). The coverage period extended from March 10, 2018 through March 10, 2019.[1] (*Id.*, PageID.1391).

Sumika is a thermoplastic products supplier. (ECF No. 47-4, PageID.1507, ¶ 1). The company first retained Global as a transportation intermediary in 2014 to facilitate its merchandise shipments within the United States.[2] (*Id.*, PageID.1508, ¶ 4). Sumika hired Global as its customs broker beginning in August 2016. (*Id.*, PageID.1508, ¶ 5; ECF No. 50-2, PageID.1638; ECF No. 50-7, PageID.1938). Global hired Michael Dubin, a licensed customs broker, to oversee the payment of customs charges on Sumika's behalf. (ECF No. 47-7, PageID.1508-09, ¶¶ 5-6, 8;

---

[1] The policy operated retroactively through March 10, 2014. (ECF No. 47-2, PageID.1393). The policy defines "Retroactive Date" as "the first day that an incident resulting in a claim may occur in order to trigger the policy." (*Id.*, PageID.1399).

[2] Although Underwriters contests this fact, it appears in a supporting affidavit to Sumika's state court default judgment motion and as an allegation in Sumika's state court complaint. (ECF No. 47-3, PageID.1413, ¶ 7; ECF No. 47-4, PageID.1508, ¶ 4). The Court deems this fact admitted. *See Epps v. 4 Quarters Restoration LLC*, 498 Mich. 518, 554 (2015) ("Entry of a default judgment is equivalent to an admission of every well-pleaded matter in the complaint."). The timing of Global's business relationship with Sumika, though, has no bearing on the outcome of this case.

ECF No. 50-2, PageID.1627, Tr.18:11-19; ECF No. 50-6, PageID.1827, Tr.11:1-4, PageID.1828, Tr.17:11-13). Between November 2016 and April 2018, Dubin forwarded 111 "Customs Invoices" to Sumika, with instructions to remit the invoiced amounts to Global for payment of Sumika's customs charges. (ECF No. 47-7, PageID.1509-10, ¶ 9; ECF No. 51-25, PageID.2322-69). The invoices totaled $608,284.40. (ECF No. 47-7, PageID.1509, ¶ 9).

Sumika maintained a debit/ACH agreement with United States Customs and Border Protection ("CBP") during this same period. (*Id.*, PageID.1510, ¶ 11). The arrangement allowed Sumika to pay customs charges directly from its own bank account. (ECF No. 50-13, PageID.1977, Tr.47:21-48:7). Although Sumika alleges that it informed Dubin of its direct payment agreement with CBP, the company continued to pay its customs charges directly to CBP while also remitting payments to Global for the same customs charges. (ECF No. 47-7, PageID.1510-11, ¶¶ 11-12).

When Sumika discovered these double payments in April 2018, it notified Global and demanded a refund of the excess charges. (*Id.*, PageID.1510-11, ¶¶ 12-13; ECF No. 50-13, PageID.1995, Tr.120:3-20; ECF No. 51-15, PageID.2271-74). Sumika also demanded payment for demurrage and storage charges resulting from Global's mishandling of certain domestic shipments.[3] (ECF No. 47-7, PageID.1511,

---

[3] Demurrage is a charge the merchant pays for the use of a shipping container within the terminal beyond a specified time period known as "free time." Jens Roemer, *Demurrage and Detention Charges in Container Shipping*, (UNCTAD Transport

3

¶ 16; ECF No. 5013, PageID.2002, Tr.146:4-147:19; ECF No. 56-1, PageID.2455). Global notified Underwriters about Sumika's demands and submitted a claim under the policy on or about May 3, 2018. (ECF No. 51-25, PageID.2316). Underwriters denied coverage of the duplicate customs payments claim on May 8, 2018, but it requested additional information from Global concerning Sumika's demand for demurrage and storage charges. (ECF No. 47-6, PageID.1450-51; ECF No. 56-1, PageID.2453-55).

On May 22, 2018, Global's chief executive officer, Petra Clark, advised Underwriters that Sumika had settled the demurrage and storage charges on its own and that "for the time being I believe we can close this claim." (ECF No. 56-1, PageID.2452; ECF No. 50-2, PageID.1624, Tr.6:14-17). Underwriters kept the claim open for an additional 60 days and requested an update from Global in the event Sumika subsequently demanded reimbursement from Global. (ECF No. 56-1, PageID.2452). No one disputes that Underwriters closed the claim after Global ignored Underwriters' requests for a status update in July and October 2018. (*Id.*, PageID.2451).

In the interim, Sumika sued Global in the Eastern District of Michigan to recoup the excess customs charge payments. (ECF No. 10-4, PageID.359-95). It

---

and Trade Facilitation Newsletter No. 80 - Fourth Quarter 2018, Article No. 28), https://unctad.org/news/demurrage-and-detention-charges-container-shipping.

also commenced an adversary proceeding against Global's principals after the company declared Chapter 13 bankruptcy. (ECF No. 10-5, PageID.397-428). Sumika voluntarily dismissed both actions without prejudice in July 2019. (Case No. 18-cv-11988, ECF No. 18; Bank. Case No. 18-04414-mlo, ECF No. 44). Global never notified Underwriters of either lawsuit. (ECF No. 47-14, PageID.1567, 1571-72, Inter. Answer Nos. 8, 10).

Sumika sued Global again the following month, this time in Oakland County Circuit Court (the "State Court Action"). (ECF No. 47-3, PageID.1411-34). The complaint renewed Sumika's claims to the excess customs charge payments as well as the demurrage and storage charges Sumika incurred because of Global's alleged negligence. (*Id.*). While Sumika notified Underwriters about the lawsuit, Global never appeared in the action, it never notified Underwriters about the lawsuit, and Underwriters did not intervene to seek a declaration of its obligations under the policy. (ECF No. 47-14, PageID.1568, 1571-72, Inter. Answer Nos. 9-10). Underwriters did, however, issue a supplemental declination of coverage letter to Global while the State Court Action remained pending. (ECF No. 10-8, PageID.468-77).

On November 27, 2019, the state court entered a default judgment against Global in the amount of $634,763.16. (ECF No. 47-8, PageID.1533-34). Sumika mailed Underwriters a copy of the default the judgment on December 3, 2019. (ECF

5

No. 47, PageID.1362; ECF No. 47-14, PageID.1568, Inter. Answer No. 9). In response, Underwriters filed this declaratory action against Global and Sumika. (ECF No. 1).

Sumika then obtained a writ of garnishment from the state court, naming Underwriters as the garnishee. (ECF No. 47-9, PageID.1536). Underwriters removed the garnishment proceeding to the Eastern District of Michigan as well. (Case No. 20-cv-10180, ECF No. 1). The Court consolidated both cases through a stipulated order. (ECF No. 16; Case No. 20-cv-10180, ECF No. 5). Underwriters and Sumika now cross-move for summary judgment on their respective claims and counterclaims. (ECF Nos. 47, 53).

III.     Legal Standards

A moving party is entitled to summary judgment where the "materials in the record" do not establish the presence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c). All the evidence, along with all reasonable inferences, must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When interpreting a contract in a diversity action, federal courts apply the law, including the choice-of-law rules, of the forum state – in this case, Michigan. *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 302 (6th Cir. 2008). Because Underwriters' policy contains no choice-of-law provision, under Michigan choice-of-law rules, the

Court must evaluate (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject-matter of the contract, and (5) the place of incorporation of the parties, to determine whether Michigan law governs this dispute. *Chrysler Corp. v. Skyline Indus. Servs.*, 448 Mich. 113, 125 (1995). All these factors weigh in favor of applying Michigan law. And the parties concur. (ECF No. 47, PageID.1363-65; ECF No. 53, PageID.2402-03; ECF No. 56, PageID.2430-32).

IV. Analysis

    A. *Michigan's Framework for Interpreting Insurance Policies*

Michigan courts read insurance policies using "the same contract construction principles that apply to any other species of contract." *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 461 (2005). "[U]nambiguous contracts are not open to judicial construction and must be *enforced as written*." *Id.* at 468 (emphasis in original). Insurance policies are accorded their "ordinary and plain meaning if such would be apparent to a reader of the instrument." *DeFrain v. State Farm Mut. Auto. Ins. Co.*, 491 Mich. 359, 367 (2012) (quotation omitted). The meaning and legal effect of contractual provisions are legal questions that courts decide. *Id.* at 366-67.

Whether an insured is entitled to insurance benefits is a two-part inquiry. *Heniser v. Frankenmuth Mut. Ins.*, 449 Mich. 155, 172 (1995). The first question asks whether the policy "provides coverage to the insured." *Id.* In the event it does,

7

the second question asks whether some form of exclusion precludes coverage. *Id.* The insured carries the burden of demonstrating that the policy covers the claims. *Id.* The insurer "has the burden to prove that one of the policy's exclusions applies." *Auto Owners Ins. Co. v. Seils*, 310 Mich. App. 132, 146 (2015); *see also Hunt v. Drielick*, 496 Mich. 366, 373 (2014).

### B. Global Did Not Satisfy the Policy's Notice Provision

Underwriters' insurance policy covers "any claim first made against [Global] and reported to Underwriters during the Policy Period or Extended Reporting Period, . . . caused by any negligent act, error or omission of [Global] . . . as a Transportation Intermediary or Customs Broker." (ECF No. 47-2, PageID.1395).

A claim is "first made against [Global] at the **earliest** of the following: . . . [o]n the date when [Global provides] written notice in accordance with Conditions, Item 6, of an act, error or omission that may result in a claim being made against [Global]." (*Id.*) (emphasis in original). Item 6 of the policy's conditions is entitled "Insured's *duties* in the event of incident, claim, or *suit*." (*Id.*, PageID.1400) (emphasis added). It imposes a continuing obligation on Global to notify Underwriters of a "claim" or "suit" against Global "as soon as practical, but in any event no later than 60 days after the end of the policy period, or extended reporting period, if purchased." (*Id.*, PageID.1401). The policy makes clear that "[n]o action

8

shall lie against Underwriters unless [Global] shall have fully complied with all the terms of the Policy . . ." (*Id.*, PageID.1402).

The import of these contractual terms is straightforward. Because Global never notified Underwriters about the State Court Action – or the resulting default judgment – Global breached Item 6 of the policy's conditions. "No action" may now "lie against Underwriters" for insurance coverage since Global did not "fully compl[y] with all" the policy's terms.

Sumika challenges this outcome on two fronts. It first argues that Underwriters received actual notice of the State Court Action – and, therefore, suffered no prejudice – because Sumika kept Underwriters apprised of all the developments in the case, from the commencement of the action through the issuance of the default judgment. (ECF No. 47, PageID.1362, 1366). Pointing to *Koski v. Allstate Ins. Co.*, 456 Mich. 439 (1998), Sumika contends that Underwriters received as much notice as it was entitled to receive under Michigan law, regardless of the policy's specific notice provisions.

In *Koski*, the Michigan Supreme Court held that "an insurer who seeks to cut off responsibility on the ground that its insured did not comply with a contract provision requiring notice immediately or within a reasonable time must establish actual prejudice to its position." *Id.* at 444. The court observed that "if the insurance company received adequate and timely information of the accident or the institution

9

of an action for the recovery of damages it is not prejudiced, regardless of the source of its information." *Id.* at 445. Therefore, Sumika argues, its notice to Underwriters should have satisfied the policy's notice provision.

But Sumika overlooks an important postscript. Fourteen years after deciding *Koski*, the Michigan Supreme Court significantly limited its central holding in *DeFrain v. State Farm Mut. Auto. Ins. Co.*, 491 Mich. 359 (2012). There, the court distinguished between indefinite notice periods – like the one presented in *Koski* – from definite notice periods, like the one appearing in Underwriters' policy. The *DeFrain* court concluded that "[t]he holding in *Koski* imposed a prejudice requirement *only* on contractual provisions 'requiring notice immediately or within a reasonable time' . . . [it] did not purport to impose a prejudice requirement on contractual provisions requiring notice within a specified time such as 30 days." *Id.* at 375 (emphasis added). The court found no reason to impose a prejudice requirement when "a contract provision requiring notice . . . 'within 30 days,' . . . could not be clearer." *Id.*

Here, Underwriters' policy contains a definite notice period compelling Global to notify Underwriters about the State Court Action "as soon as practical, *but in any event no later than 60 days after the end of the policy period* . . ." (ECF No. 47-2, PageID.1401) (emphasis added). Global never satisfied this condition. And

10

Sumika's attempt to remedy Global's oversight by forwarding its own notices to Underwriters proved ineffectual under *DeFrain*.

Even assuming Sumika's notifications to Underwriters could fulfill the policy's notice provision, they were untimely. Global allowed the policy's coverage to lapse after March 10, 2019, without ever purchasing an "extended reporting period." (ECF No. 47-14, PageID.1572, Inter. Answer No. 10). May 9, 2019 marked 60 days after the coverage period concluded, *i.e.*, the last day Global could notify Underwriters about the State Court Action in accordance with the policy's notice provision. Sumika (*not* Global) first notified Underwriters about the State Court Action on August 20, 2019 – well beyond the requisite timeframe. (ECF No. 47-2, PageID.1362; ECF No. 47-14, PageID.1567, Inter. Answer No. 8).

Sumika further maintains that the notice of claims Global forwarded to Underwriters in May 2018 qualified as adequate notice of the August 2019 State Court Action. (*Id.*, PageID.1366-67). This theory is unpersuasive for two reasons. *One* – the policy charges Global with an independent duty to notify Underwriters of a "claim" or "suit" brought against the company "as soon as practical, but in any event no later than 60 days after the end of the policy period, or extended policy period . . ." (ECF No. 47-2, PageID.1401). Since Global failed to notify Underwriters about the State Court Action altogether, "[n]o action" may "lie against

11

Underwriters" to pay off the default judgment. (ECF No. 47-2, PageID.1402; *see also* PageID.1395).

And *two* – while Global previously informed Underwriters about Sumika's potential claim for demurrage and storage charges, Global's CEO advised Underwriters on May 22, 2018, that Sumika had settled those charges on its own and that "for the time being I believe we can close this claim." (ECF No. 56-1, PageID.2452). Underwriters followed through and closed the claim after Global ignored Underwriters' requests for a status update in July and October 2018. (*Id.*, PageID.2451). No claim, therefore, remained open to serve as notice of the State Court Action when Sumika commenced that litigation in August 2019.

Because Global never told Underwriters about the State Court Action (1) the policy does not cover the losses Sumika attributes to Global's negligence, and (2) Underwriters is not responsible for paying the default judgment.

C. *Sumika's Remaining Contentions*

Since Global's failure to abide by the policy's notice provision violated a condition of coverage, the Court need not address whether Sumika's state court claims fall within the policy's scope or whether they arise from conduct qualifying as an exclusion. Accordingly,

IT IS ORDERED that Underwriters' motion for summary judgment (ECF No. 53) is granted.

IT IS FURTHER ORDERED that Sumika's cross-motion for summary judgment (ECF No. 47) is denied.

Dated: March 16, 2022  s/Bernard A. Friedman
      Detroit, Michigan  BERNARD A. FRIEDMAN
                                SENIOR UNITED STATES DISTRICT JUDGE